A89A2311. THE STATE v. CHAMBERS.
(391 SE2d 657)

CARLEY, Chief Judge.

Appellee was indicted for kidnapping, possession of a firearm during commission of a felony, providing a firearm to a person under 21, driving without a license, possession of a firearm by a convicted felon, and two counts of armed robbery. He filed a pre-trial motion to suppress the firearms and the stolen cash. The trial court granted appellee's motion and the State appeals.

1. On August 22, 1989, the trial court conducted a hearing on appellee's motion to suppress and, at the conclusion of the hearing, stated that it would grant the motion. The State filed its notice of appeal on August 24, 1989, but the trial court's written order granting

appellee's motion was not entered until August 31, 1989. Appellee has moved to dismiss the State's appeal on the ground that it was filed prematurely.

"Where the appeal is too early, rather than too late, '(t)he rule now is that if the notice is sufficient to advise the opposing party that an appeal is being taken from a specific judgment, and if no prejudice will result to the appellee in allowing the appeal, then the appeal should not be dismissed merely because the notice was premature.' [Cit.] We find no lack of notice or danger of prejudice to the appellee in this case." *Yeager v. Poole Truck Lines*, 162 Ga. App. 803 (1) (293 SE2d 64) (1982). Accordingly, "we will review the case on its merits rather than dismiss it for lack of jurisdiction in accordance with *Gillen v. Bostick*, 234 Ga. 308 (1) (215 SE2d 676) (1975)." *Eller v. State*, 183 Ga. App. 724 (360 SE2d 53) (1987). See also *Hendrick v. State*, 257 Ga. 514 (fn. 1) (361 SE2d 169) (1987). In view of the whole court case of *Eller*, supra, *State v. Rimes*, 177 Ga. App. 872 (341 SE2d 710) (1986) is no longer viable authority upon which to base the dismissal of a prematurely filed appeal. OCGA § 15-3-1 (d).

2. At the hearing on appellee's motion to suppress, the State presented the testimony of two law enforcement officers, Officer Drury and Deputy Johnson. Appellee offered nothing in opposition to the officers' testimony. The State's unrebutted evidence showed the following: In connection with the report of an armed robbery, Officer Drury was maintaining a lookout for the perpetrators' vehicle along a four-lane road. Included among the descriptive details that had been relayed to Officer Drury was the fact that the suspected car had "revolving lights around the tag." When he observed a passing vehicle that appeared to fit the description that had been given to him, Officer Drury pulled out in his marked patrol car to follow it. At that time, a second car was traveling beside the suspected car. Although there was initially nothing suspicious about this second car, it suddenly slowed down and then moved in behind the suspected car as Officer Drury's marked patrol car approached. At speeds of 45-50 miles per hour, the second car then continued to follow the suspected car at distances as close as six-to-seven feet in an apparent attempt to obstruct Officer Drury's view of the suspected car's tag. When Officer Drury was eventually able to observe the tag of the suspected car and confirm his suspicions that it matched the description given to him, he called for assistance and Deputy Johnson responded to his request. The officers determined that the cars should be stopped separately as a precautionary measure should the occupants be armed. It was Deputy Johnson who stopped the second vehicle. Appellee was the driver of the second vehicle and, when he could not produce a driver's license, Deputy Johnson arrested him for driving without a license. In a subsequent search of appellee's vehicle, the firearms and the stolen

cash were discovered.

" ' "[R]easonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop." [Cits.]' [Cit.] 'The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow . . . a criminal to escape.' [Cit.]" *State v. Webb*, 193 Ga. App. 2 (1) (386 SE2d 891) (1989). The undisputed evidence shows that Officer Drury's stop of. the suspected car was clearly authorized based upon his "reasonable suspicion" that its occupants were fleeing armed robbers. The undisputed evidence also shows that there were two interrelated indicia of "reasonable suspicion" which likewise authorized Deputy Johnson's stop of appellee's car.

First, Officer Drury had observed that appellee's car was following too closely behind the suspected car. This was a traffic offense, which, in and of itself, justified the stop of appellee's car. The mere fact that appellee was never issued a traffic citation for following too closely is of no consequence. If an officer stops a vehicle in the good faith belief that a traffic violation has been committed, his ultimate failure to issue a traffic citation will not preclude the traffic offense from evincing the reasonable suspicion which served to justify his initial stop of the vehicle. See *State v. Webb*, supra at 4 (1); *McConnell v. State*, 188 Ga. App. 653 (1) (374 SE2d 111) (1988). Thus, the fact that appellee was subsequently arrested for another traffic offense that he was actually committing in the arresting officer's presence, which offense was then more objectively determinable than that for which appellee was originally stopped, in no way militates against consideration of appellee's commission of the original traffic offense as the reasonable suspicion which nevertheless justified the initial stop of his vehicle.

Second, Officer Drury had observed that appellee's car moved from beside to behind the suspected car and then followed it in an apparent attempt to frustrate his identification efforts. By engaging in this deliberately furtive action, appellee established the existence of a suspicious nexus between his car and the suspected car. " '[D]eliberately furtive actions . . . at the approach of . . . law officers are strong indicia of *mens rea*. . . .' [Cit.] Accordingly, regardless of whether appellee's act of [following too closely was the reason for the stop], it was nevertheless clearly a sufficiently suspicious and deliberately furtive response to the [approach of law officers] so as to give [them] at least a reasonable suspicion of appellee's criminal activity and to warrant further investigation." *State v. Webb*, supra at 4 (1).

Thus, the undisputed evidence shows that the stop of appellee's car was clearly authorized based upon reasonable suspicion of crimi-

nal activity. "Once the stop was effected, [appellee] was subject to custodial arrest for operating a motor vehicle without a valid driver's license, see OCGA §§ 40-5-20 (a) and 40-5-120 ([6]). . . ." *Wilder v. State*, 192 Ga. App. 891 (386 SE2d 685) (1989). See also *Coley v. State*, 177 Ga. App. 669 (1) (341 SE2d 9) (1986). Deputy Johnson "did not have to wait until [he] had probable cause to arrest for [armed robbery] in order to . . . arrest [appellee] for driving [without a] license, a crime which was being committed in [his] presence." *State v. McCloud*, 187 Ga. App. 580, 583 (370 SE2d 831) (1988).

3. Although the State's evidence was unrebutted, appellee asserts that the testimony of Officer Drury conflicts with the testimony of Deputy Johnson in two respects and these conflicts cast doubt on the overall credibility of both officers.

Officer Drury testified that he observed that the cars were as close as six-to-seven feet. This testimony related to Officer Drury's observations during the period of time immediately after appellee's car had moved in behind the suspected car and *before* Deputy Johnson arrived to assist in stopping the vehicles. Officer Drury's testimony in this regard in no way conflicts with Deputy Johnson's testimony that he observed that the cars were within 100 feet of each other. Deputy Johnson's testimony related to his observations during the period of time *after* his arrival, which was subsequent to Officer Drury's observation of the commission of the traffic offense of following too closely. Accordingly, there was no conflict whatsoever between the officers' testimony.

As to the second purported conflict, Officer Drury did describe the suspected car as a black Chevrolet Monte Carlo and Deputy Johnson described it as a green Oldsmobile Cutlass. However, Officer Drury stated that he was on the lookout for a dark Cutlass and that a Monte Carlo has the same body style as a Cutlass. Deputy Johnson testified that the two officers were under the impression the car was a Monte Carlo, but that he believed it turned out to be a Cutlass. In light of this testimony, and the fact that the stop occurred at night, any conflict as to the make of the suspected car would ultimately be insignificant. Cf. *Creecy v. State*, 235 Ga. 542 (2) (221 SE2d 17) (1975). Moreover, any such conflict would be immaterial to the existence of the reasonable suspicions that justified the initial stop of the cars. Regardless of any confusion over the make of the suspected car, Officer Drury clearly had a reasonable suspicion to stop it when he finally observed its tag and he also clearly had a reasonable suspicion to stop appellee's car when he observed it following the suspected car too closely in a deliberately furtive manner. "[O]n the crucial issue, matters of credibility and weight and conflict resolution are not involved." *State v. Adams*, 186 Ga. App. 87, 89 (366 SE2d 326) (1988).

It follows that the State met its burden of proof by the unrebut-

ted testimony of its two witnesses. Thus, the trial court erred in granting appellee's motion to suppress.

*Judgment reversed. McMurray, P. J., concurs. Beasley, J., concurs in Divisions 1 and 3 and in the judgment.*

DECIDED FEBRUARY 9, 1990 —
REHEARING DENIED FEBRUARY 22, 1990 — 

*Harry D. Dixon, Jr.*, District Attorney, *George E. Barnhill, Deborah M. Perlis*, Assistant District Attorneys, for appellant.
*J. Kelly Brooks, John B. Adams*, for appellee.