A91A1560. CARROLL v. THE STATE.
(415 SE2d 37)

BEASLEY, Judge.
Following denial of a motion for new trial, Carroll appeals his convictions for selling marijuana to an undercover police officer on March 8 and 9, 1989, and possessing marijuana on September 20, 1989, with intent to distribute, all in violation of OCGA § 16-13-30 (j) (1).

1. Appellant contends that he was entitled to a directed verdict of acquittal on the charge of possession with intent to distribute because the evidence was insufficient. He maintains (a) that the State

failed to show that he occupied the premises at which the marijuana was found or had any link to the growing plants, and (b) that it failed to identify scientifically the found substances as marijuana.

(a) The evidence construed in favor of the verdicts showed the following events, culminating in the September 20 incident. In March 1989 there was an ongoing criminal investigation of the Carroll family. On the evening of March 8, an undercover narcotics officer went to a residence to attempt to purchase illegal drugs. Carroll came to the residence and introduced himself to the officer. Another individual, possibly the confidential informant, mentioned that the officer was looking for marijuana.

Carroll told the officer he had a pound of it in his vehicle for $400. The officer and Carroll agreed on a price, and Carroll brought the marijuana inside. The amount of marijuana appeared to the officer to be less than a pound, so he negotiated the price to $300. The bag containing the marijuana had several holes in it, which Carroll laughingly explained were caused by his bulldog. The sale was completed and the officer inquired about making another marijuana purchase the following evening. Carroll agreed to sell a pound for $500. The two arranged to meet the next evening at 9:00 p.m. at a market. Carroll gave the officer his telephone number.

The next evening, after both men arrived at the market, Carroll approached the officer's unmarked vehicle with a brown paper bag containing what the officer estimated to be less than a pound of marijuana. The officer negotiated the price down to $400. In order to maintain his cover the officer pretended to be very nervous, telling Carroll he was afraid they were "going to get busted." Carroll assured him not to worry, that Carroll had "done this a lot" and that it would be okay. They also discussed a possible future purchase of cocaine. Carroll priced the officer an "Eight-Ball" of 95 percent pure cocaine for $240.

During the next six months, Carroll and the officer communicated by telephone, discussing various other drug transactions. At one point, the officer posed as a drug dealer and told Carroll he had access to a large quantity of cocaine. Carroll inquired about buying cocaine from the officer and said he was attempting to solicit buyers for it.

During this time, a residence believed to be that of Carroll was kept under surveillance. Carroll, his wife, one of the Carrolls' sons and his wife, and another female were observed staying there. The investigators received information that marijuana was being grown and stored there. In the area, the normal harvest time for marijuana was late August or September. A search warrant was procured and executed on September 20.

When the officers first arrived at the residence, only Carroll's wife and grandson were present. As more of the officers approached, the

undercover officer who had previously bought the marijuana observed Carroll in his car exiting from a patch of woods just south of the residence. As soon as Carroll pulled into the yard, the officers executed arrest warrants for him based on the prior sales. A pat-down search disclosed a handful of freshly-picked marijuana leaves in Carroll's left shirt pocket.

The wood frame residence was just off the the roadway and driveway. Approximately 75 yards to the southwest was an old school bus converted to living quarters. Among the animals on the property were three bulldogs, one of which was cabled outside the bus. A trail going from the edge of the wood line went down into the woods behind the house. Not very far down the trail, the officers found 11 "head-high" marijuana plants growing in buckets. Thick vegetation near the plants was well worn from travel.

The bus was locked and the officers obtained a key from Carroll. Inside was a quantity of marijuana drying on a small table.

Carroll claimed that he did not occupy the premises at the time the warrants were executed but was there only periodically to do some building and repair work. However, the evidence of sustained occupancy obtained during surveillance, the presence of members of his family and his pet bulldog, Carroll's emergence from the woods with freshly-picked marijuana in his pocket, the proximity of the school bus containing marijuana to which Carroll had the key, and his prior sales of substantial quantities of marijuana to the officer authorized a rational trier of fact to find that Carroll occupied the searched premises for the purpose of exercising dominion or control over the growing and harvested marijuana beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The "equal access" argument is unavailing. "It is true that ' "[m]erely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime." (Cit.)' [Cit.] However, '(w)here there is evidence other than "equal access" connecting an accused to contraband, it is for the jury to determine guilt or innocence.' [Cit.]" *Blitch v. State*, 188 Ga. App. 487, 488 (373 SE2d 227) (1988). The only evidence that persons other than Carroll and his family had continuing access to the property was appellant's assertions of occupancy and control by others at the time of the search and seizure. Access by others would not eliminate the circumstances outlined above as other evidence with which to connect Carroll to the marijuana.

(b) Appellant's claim that no substance found within the immediate vicinity of the searched residence was scientifically identified as marijuana is without merit.

There were five exhibits directly relevant to identification of the

substances seized during the September 20 search. Two were photographs of the growing plants and one was a photograph of the harvested plants spread for drying in the school bus. The other two exhibits, 3 and 9, contained actual specimens of what was seized; number 9 was from the school bus.

The State's forensic chemist testified that on October 2, 1989, he received a second package from the police consisting of a brown evidence envelope sealed with tape and two large evidence bags sealed with staples and tape and containing leafy material and that specified tests performed on this leafy material confirmed the presence of marijuana. The parcel was admitted as Exhibit 3. Although it is unclear whether or not the chemist tested and identified as marijuana *all* substances confiscated on September 20, including that which was later introduced as Exhibit 9, there was undisputed evidence that at least some of the leafy substances seized on September 20 were marijuana.

2. Appellant contends that the trial court erred in failing to grant his motion for mistrial. His ground is that the State was improperly allowed to introduce evidence of a similar transaction regarding cocaine without giving notice of its intent to do so as required by Uniform Superior Court Rule 31.3.

No USCR 31.3 notice was required because no such transaction or occurrence was introduced. The officer's testimony about discussions with appellant for possible future sales of cocaine at the time of the marijuana buys and prior to the search is not evidence of another distinct and separate transaction subject to the rule. It is instead direct evidence of the circumstances of the transactions on trial. See *Dickerson v. State*, 200 Ga. App. 366, 368 (2) (408 SE2d 137) (1991); *Chezem v. State*, 199 Ga. App. 869, 871 (3) (406 SE2d 522) (1991); *Nolton v. State*, 196 Ga. App. 690 (1) (396 SE2d 605) (1990). " 'The state is entitled to present evidence of the entire res gestae of the crime. Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial. [Cit.] This is true even if the defendant's character is incidentally placed in issue.' [Cits.]" *Garrett v. State*, 188 Ga. App. 176 (1) (372 SE2d 506) (1988).

Mistrial was not warranted because the evidence "did not fall within the ambit of the rule relating to notice of the State's intention to present evidence of similar transactions. [Cits.]" Id. at 177 (2).

*Judgments affirmed. Carley, P. J., and Judge Arnold Shulman concur.*

DECIDED JANUARY 22, 1992.

*Bates, Kelehear & Starr, James E. Toland, Jr.,* for appellant.
*Jack O. Partain III, District Attorney, Todd L. Ray, Assistant*

*District Attorney*, for appellee.