A94A0808. CHAMBERS v. THE STATE.
(444 SE2d 820)

BEASLEY, Presiding Judge.

Chambers appeals his convictions for armed robbery, OCGA § 16-8-41 (a); possession of a firearm during the commission of a felony, OCGA § 16-11-106 (b); driving without a license, OCGA § 40-5-20; and possession of a firearm by a convicted felon, OCGA § 16-11-131. All stem from a 1989 robbery of a store's employees at gunpoint. The case has an extensive procedural history which is necessary to understand the errors claimed.

Chambers was originally indicted for kidnapping, possession of a firearm during commission of a felony, providing a firearm to a person under twenty-one, driving without a license, possession of a firearm by a convicted felon, and two counts of armed robbery. On August 22, 1989, the trial court granted Chambers' pre-trial motion to suppress the firearms and the stolen cash. The State appealed, and the suppression was reversed. *State v. Chambers*, 194 Ga. App. 609 (391 SE2d 657) (1990). Chambers moved for reconsideration, which was denied on February 22, 1990.

He filed a notice of intention to apply to the Supreme Court for a writ of certiorari on March 2. Prior to this court issuing the remittitur, the trial court commenced the trial of Chambers and two co-defendants on March 5. It resulted, on March 7, in Chambers' acquittal on the kidnapping charge, one of the armed robbery charges, and the charge of providing a firearm to a person under twenty-one, but verdicts of guilty on the remaining charges. Sentences were imposed on March 20.

This court issued its remittitur on that day and it was received and filed in the trial court on March 22. Chambers moved for a new trial, contending that the trial court lacked jurisdiction to try him before the remittitur issued. The motion was denied and Chambers appealed, unsuccessfully, to this court. *Chambers v. State*, 201 Ga. App. 245 (410 SE2d 771) (1991). The Supreme Court granted a writ of certiorari and determined that the trial court did not have jurisdiction to take any action in the case prior to receiving the remittitur. The Court expressly stated that double jeopardy would not prevent a retrial because Chambers' March 5 trial was a nullity. *Chambers v. State*, 262 Ga. 200 (415 SE2d 643) (1992).

This court's judgment was vacated, the judgment of the Supreme Court was made the judgment of this court, and the judgment of the trial court was reversed. *Chambers v. State*, 204 Ga. App. 396 (420

SE2d 393) (1992). The remittitur was filed in the trial court on or about June 18, 1992. On March 1, 1993, Chambers filed in the trial court a "Motion for Trial or, in the Alternative, for Dismissal" to assert his federal constitutional right to a speedy trial. Retrial commenced on June 21, presided over by a different judge, and Chambers was convicted on June 24.

1. The first enumeration is that the trial court erred in failing to grant the "Motion for Trial, or in the Alternative, for Dismissal." Relying on *State v. King*, 137 Ga. App. 26 (222 SE2d 859) (1975), which cites *Treadwell v. State*, 233 Ga. 468, 469 (211 SE2d 760) (1975), Chambers argues the factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972). He does not invoke OCGA § 17-7-170 or a state constitutional ground.

The four factors the court must weigh "in balancing the conduct of the prosecution and the defendant on the issue of the denial of the [federal] constitutional right to a speedy trial . . . are: (1) length of delay, (2) . . . reason for . . . delay, (3) . . . defendant's assertion of his right, and (4) prejudice to . . . defendant." *Treadwell*, supra at 469.

(a) Length of delay. Unless the delay is "presumptively prejudicial" the speedy trial claim need not be analyzed under the remaining *Barker* factors. *Barker*, supra at 530. See *Redd v. State*, 261 Ga. 300, 302 (404 SE2d 264) (1991). "If the delay passes this threshold test of 'presumptive prejudice,' then the *Barker* inquiry is triggered. The delay is then considered a second time by factoring it into the prejudice prong of the *Barker* analysis, with 'the presumption that pretrial delay has prejudiced the accused intensif(ying) over time.' [Cits.] However, the presumptive prejudice arising from delay 'cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria.' [Cit.] Instead, 'it is part of the mix of relevant facts, and its importance increases with the length of delay.' [Cit.]" *Boseman v. State*, 263 Ga. 730, 732 (1) (a) (438 SE2d 626) (1994).

Here, the delay is not measured from the time of indictment or from the initial prosecution because the defendant's own actions in seeking multiple reviews prolonged resolution while at the same time affording him another opportunity for trial. The span must be computed from the most recent remittitur to the trial court. The retrial occurred three days short of one year from the date the trial court regained jurisdiction in the matter. As a delay approaches one year, in general it is presumptively prejudicial. See *Boseman*, supra at 732 (1) (a). The remaining *Barker* factors must be considered.

(b) Reason for delay. The record discloses no reason, but there is no evidence that the State deliberately attempted to delay the retrial in order to hamper the defense. See *Boseman*, supra at 732 (1) (b).

(c) Defendant's assertion of his right. Chambers never asserted

his statutory right, see OCGA § 17-7-170, or his state constitutional right. 1983 Ga. Const., Art. I, Sec. I, Par. XI. He first asserted his federal constitutional right to a speedy trial on retrial by motion on March 1 and was tried less than three months later. The delay in demanding a speedy trial weighs against Chambers. See *Boseman*, supra at 733 (1) (c).

(d) Prejudice to defendant. "Prejudice should be assessed in the light of the interests of the defendant which the right to speedy trial was designed to protect. Three such interests identified by the court in Barker are: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Treadwell*, supra at 470.

Apparently Chambers has been incarcerated since his arrest in April 1989. Although this is an oppressive period, all but the time from the last remittitur is explained by the first trial and appellate activity. Assuming natural anxiety and concern, there is no other evidence of anxiety or concern due to his lengthy incarceration or of any specific prejudice from the delay. See *Boseman*, supra at 733 (1) (d).

Chambers has not been deprived of his federal constitutional right to a speedy trial.

2. Error is enumerated in allowing certain transcript testimony to be read into evidence from Chambers' prior trial. The ground is that the issues in the retrial were not identical.

The testimony was that of co-defendant Carroll, who testified as a State's witness at the original trial and who was deceased by the time of the retrial. Chambers contends that application of OCGA § 24-3-10 impermissibly placed his character in issue, because Carroll's entire transcript testimony would be introduced even though he (Chambers) had been acquitted of some of the charges in the first trial.

In applying OCGA § 24-3-10, the first question is whether the party against whom the former testimony is offered had adequate opportunity for cross-examination. See *Barnes v. State*, 256 Ga. 370, 371 (2) (b) (349 SE2d 387) (1986); see also *Transamerica Ins. Co. v. Thrift-Mart*, 159 Ga. App. 874, 877 (2) (285 SE2d 566) (1981). Chambers does not contest the adequacy of the cross-examination opportunity.

Second, there is little question that the issues on retrial were substantially the same, which is what the statute requires.

Third, " ' "[t]he state is entitled to present evidence of the entire res gestae of the crime. Even though a defendant is not charged with every crime committed during a criminal transaction, every aspect of it relevant to the crime charged may be presented at trial. (Cit.) This is true even if the defendant's character is incidentally placed in is-

sue." (Cits.)' [Cit.]" *Carroll v. State*, 202 Ga. App. 544, 547 (2) (415 SE2d 37) (1992).

3. Chambers enumerates as error the admission of testimony, both by transcript and live witnesses, concerning crimes for which he had been acquitted, thereby impermissibly placing his character in issue. The contention is without merit. See Division 2.

4. Error is also claimed in the trial court's requiring Chambers to proceed to trial with a court-appointed attorney, "after [he] made timely statement tantamount to request to proceed pro se."

"Both the federal and state constitutions guarantee a criminal defendant the right to self-representation. See *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975); 1983 Ga. Const., Art. I, Sec. I, Par. XII. An unequivocal assertion of the right to represent oneself, made prior to trial, should be followed by a hearing to ensure that the defendant knowingly and intelligently waives the right to counsel and understands the disadvantages of self-representation. [Cits.]" *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990).

The record does not reveal any request that Chambers proceed to trial pro se, but rather only that he had complaints about his appointed counsel.

Prior to voir dire on the retrial, Chambers and court-appointed counsel had a bench conference with the court in which Chambers attempted to submit certain "motions" which counsel refused to do on the basis that they were groundless. During the colloquy about counsel's unwillingness to file the motions thought to be frivolous, Chambers stated that counsel was representing him poorly. The court said it would take up the motions during the course of trial, and Chambers retorted that he would "rather not let [the attorney] represent me at trial." The court inquired if Chambers had another attorney to represent him and Chambers responded that he did not have one at that time but would rather not stand trial with present counsel. The court then told Chambers he would have to stand trial with present counsel unless he had another attorney to represent him. Chambers responded that that was "okay" and he would leave his "motions" with the court.

The colloquy, in its entirety, confirms the trial court's apparent interpretation of Chambers' request, that is, not that he be allowed to represent himself but that he be represented by different counsel. "There is no Sixth Amendment guarantee of a ' "meaningful relationship" between an accused and his counsel.' [Cit.] '(A) criminal defendant will not be permitted to use the discharge of counsel and employment or appointment of another as a dilatory tactic in postponing or avoiding trial of the issue. (Cit.) (While) all criminal defendants have a constitutional right to be defended by counsel of their own choosing whenever such counsel may reasonably be secured(,) . . . an

indigent criminal defendant does not have an absolute right to discharge one court-appointed counsel and have another substituted in his place. A request of this sort addresses itself to the sound discretion of the trial court.' (Indention omitted.) [Cit.]" *Turner v. State*, 199 Ga. App. 836 (1) (406 SE2d 512) (1991).

5. Lastly, Chambers contends that the trial court erred by sentencing him to a more severe sentence than he was previously given on the same charges on the prior trial, where the trial court failed to affirmatively state in the record what actions subsequent to the first trial were justification for the harsher sentence.

" 'There is no absolute constitutional bar to imposing a more severe sentence upon resentencing, but vindictiveness must not be the motivating force behind the increased sentence. North Carolina v. Pearce, 395 U. S. 711 (89 SC 2072, 23 LE2d 656) ((1968)).' [Cit.] 'In order to assure the absence of such a motivation . . . whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.' North Carolina v. Pearce, supra at 726." *Pressley v. State*, 158 Ga. App. 638, 639 (3) (281 SE2d 364) (1981).

A different judge conducted Chambers' retrial and sentencing. At the time the retrial judge pronounced punishment, he apparently was unaware of the sentences imposed at the first trial. He was informed of them shortly thereafter in the proceeding concerning whether he had given Chambers harsher treatment. Nonetheless, the judge failed to state any factual basis or reason for the increased punishment.

The case is remanded for reconsideration of the sentences in conformity with the due process principle established in *North Carolina v. Pearce*, supra. See *Crudup v. State*, 191 Ga. App. 551 (382 SE2d 391) (1989). *Texas v. McCullough*, 475 U. S. 134 (106 SC 976, 89 LE2d 104) (1986), relied on by the State, is inapposite. Although *McCullough*, too, involved different sentencers (the jury and then the court on retrial), McCullough's new trial came about because the trial judge herself concluded that it was required, and the judge provided an on-the-record logical, nonvindictive reason for the longer sentence.

*Judgments affirmed in part and reversed in part, with direction. Andrews and Johnson, JJ., concur.*

DECIDED MAY 17, 1994 —
RECONSIDERATION DENIED JUNE 1, 1994 —

*Adams & Brooks, John B. Adams, J. Kelly Brooks*, for appellant.
*H. Donnie Dixon, Jr., District Attorney, Alexander J. Markowich, George E. Barnhill, Lucy J. Bell, Assistant District Attorneys*, for appellee.