## A96A2504. MALLORY v. THE STATE.
### (483 SE2d 907)

SMITH, Judge.

Thomas Mallory was charged in DeKalb County with two counts of felony abandonment. A jury found him guilty on both counts. He appeals following the denial of his motion for new trial.

The record shows that Mallory married in 1965 in Georgia, and three children were born of the marriage. Mallory had a long-standing interest in aviation and eventually became a licensed pilot. After

---

wandering around the country seeking work as a pilot and living in their van, Mallory and his family settled in California. Mallory worked there as a commercial pilot, flying both national and international routes.

In 1982, the family was dependent for support upon Mallory. Although the family was still nominally intact, Mallory was away for extended periods; he was flying to international destinations out of New York. The family was evicted from their rented house in San Mateo, California while Mallory was away, and his wife and children moved back to Georgia into an apartment in DeKalb County.

Mallory visited his family in DeKalb County in the summer of 1982. He spent from one to three days in the family apartment, playing with the children and resuming sexual relations with his wife. Mallory then indicated he had to leave on business but said he would return in "a couple of weeks" and take the family on a vacation. His wife told him she was low on funds, and he gave her $200, which was all he said he had. He never returned.

Other than the Christmas gifts he sent the children in 1982 and the $200 he gave his wife the same year, he has never sent the family any support. His wife testified that he kept his whereabouts secret. When she was able to reach him and ask him to support his children, he refused despite bragging about his possessions. Mallory stated in an affidavit that he obtained a divorce in the Dominican Republic in 1983. His wife testified, however, that he telephoned her in 1986 and requested that she obtain a divorce, and she agreed. Although he told her he changed his mind, his wife obtained a divorce by publication in Georgia in 1986. He saw his family again briefly in 1986 in an arranged visit at a restaurant, accompanied by the woman who became his next wife. He stated frequently that he would never pay child support. His family, meanwhile, was struggling financially, receiving welfare and food stamps, although his wife worked whenever possible.

His wife attempted unsuccessfully to obtain child support through URESA. She swore out an abandonment warrant in DeKalb County, but she was told the action should be in Gwinnett because that was where she and the children were then living. An abandonment action was brought in Gwinnett County in 1987, and Mallory pled nolo contendere and was ordered to pay child support of $50 per week per child. He did not pay under the order. He left Georgia, and attempts to find and return him were unavailing. He was finally captured as a fugitive near Memphis, Tennessee, where he and his new wife raised emus. They lived on about 100 acres of land and had four vehicles and a motor home. He was extradited to Georgia and brought to court on these felony abandonment charges in DeKalb County. A Gwinnett URESA representative testified at the sentenc-

ing hearing that Mallory owed over $40,000 in back child support.

1. Mallory has filed a pro se motion to withdraw his appeal. Because Mallory raised a claim of ineffective assistance of trial counsel in his motion for new trial, the trial court appointed new counsel to represent Mallory for the hearing on the motion for new trial. The same appointed counsel also represents Mallory on this appeal and has filed a brief on appeal. Counsel has informed this Court that Mallory's pro se motion was filed without counsel's knowledge or consent.

Georgia courts have long held that "one represented by counsel on appeal does not have the right to independently conduct his own defense and have both considered by this court. [Cit.]" *Brooks v. State*, 265 Ga. 548, 551 (7) (458 SE2d 349) (1995). See also *Reid v. State*, 235 Ga. 378-381 (1) (219 SE2d 740) (1975). In *Cherry v. Coast House, Ltd.*, 257 Ga. 403 (359 SE2d 904) (1987), the Supreme Court held that members of the bar are excepted to some extent from that rule and may participate in their own representation although represented by counsel. Even in such cases, however, courts are "not required to accept random appearance and filings by both the client and his attorneys." Id. at 406 (3). Mallory is not an attorney and this Court will not accept his "random filings." It is apparent that Mallory has not coordinated his appellate strategy with that of his counsel, nor has he moved the trial court to allow him to appeal pro se. We are constrained, therefore, to dismiss Mallory's pro se motion and consider the appeal on its merits.

2. Mallory contends the trial court erred in ruling that Georgia, rather than California, has jurisdiction. In support of his contention that jurisdiction lies in California, Mallory points to his wife's divorce complaint and her 1988 URESA petition in Gwinnett, both of which state that the parties last lived together in California. But the law does not require one accused of abandonment to be domiciled in Georgia in order for this state to have jurisdiction.

Two elements are required to be proved to support a conviction for abandonment: (1) wilful and voluntary abandonment of the children by their parent; and (2) leaving the children "in a dependent and destitute condition." *Chapman v. State*, 177 Ga. App. 580 (340 SE2d 237) (1986). If a parent abandons children in another state, leaving them there in a dependent and destitute condition, the offense is complete. If the parent abandons them in another state and the children subsequently come into this state and are dependent and destitute here, "the offense is not complete although the [parent] has knowledge of their condition, unless he received them and recognized them in some way, as his family, after they had come into this state." (Citations and punctuation omitted.) Id. at 581.

Mallory's family was not abandoned in California, although they

last lived regularly as a family there. They were not left destitute, even assuming Mallory left California without the intention to return. His paychecks were being deposited at that time into a joint checking account to which his wife had access. But the family was certainly left destitute and dependent in Georgia. The State premises jurisdiction here on Mallory's 1982 visit, when he stayed with his family, resumed sexual relations with his wife, gave her money, and promised to return after leaving for a short time on business. We agree with the State that this visit constituted a recognition of his wife and children as his family. It was an acknowledgment of his family obligations within the meaning of *Chapman*, supra. The offense of abandonment was therefore completed in this state at that time, and jurisdiction is proper in Georgia.

3. Mallory also contends that even if Georgia has jurisdiction, venue properly lies in Gwinnett County rather than in DeKalb. He argues that he cannot be prosecuted in DeKalb for the same offense of which he was convicted in Gwinnett. We find no merit in this contention.

First, it is not the same offense. The 1987 Gwinnett County indictment charged him with misdemeanor abandonment of his children on December 10, 1986. Mallory entered a plea of nolo contendere to that accusation, and he was sentenced to 12 months incarceration, suspended indefinitely on condition that he pay $50 per week per child in support. In this case, the indictment charges Mallory with felony abandonment, between October 21, 1991 and June 30, 1994 as to his older daughter (who attained the age of majority in 1994) and between October 21, 1991 and May 4, 1995 as to his younger daughter. (His son had attained the age of majority prior to the return of the indictment.)

Second, abandonment is a continuing offense, and a former acquittal or conviction is not a bar to further prosecution if the children are left in a dependent condition for a period of at least 30 days prior to commencement of the prosecution. OCGA § 19-10-1 (c). That requirement was met here.

Finally, the basis for venue in Gwinnett County in the 1987 action is unclear. It may have been premised upon the family's domicile there at the time. But regardless of whether that was proper, Mallory's plea of nolo contendere, like a guilty plea, waived all defenses, known and unknown, including venue, as to that prosecution. *Lawson v. State*, 204 Ga. App. 796, 797 (1) (420 SE2d 600) (1992).

In this state, venue of a prosecution for child abandonment is in the county where the minor children first become dependent upon others for support. "This is true regardless of where the abandonment . . . may have had its beginning, because the crime is consum-

mated at the place where the child becomes dependent upon persons other than the parent. [Cits.]" *Fairbanks v. State*, 105 Ga. App. 27, 30 (123 SE2d 319) (1961). See also *Minnix v. State*, 162 Ga. App. 29, 30 (290 SE2d 131) (1982). Venue in DeKalb County in *this* action was premised upon Mallory's visit there in 1982, when he recognized his wife and children as his family, and upon the children's dependence upon others for support when he did not return after that visit and did not support them. Venue was properly laid in DeKalb County.

4. Mallory maintains the trial court erred in refusing to allow him to represent himself at trial. A defendant has a right to self-representation. *Faretta v. California*, 422 U. S. 806 (95 SC 2525, 45 LE2d 562) (1975). But he must make an unequivocal assertion of that right before trial. *Chambers v. State*, 213 Ga. App. 414, 417-418 (4) (444 SE2d 820) (1994). Here, Mallory merely insisted that he was firing his retained counsel in favor of another retained attorney who was not present, and the court refused a continuance. "[A] criminal defendant will not be permitted to use the discharge of counsel and employment . . . of another as a dilatory tactic in postponing or avoiding trial of the issue. [Cit.]" *Williams v. State*, 169 Ga. App. 812, 815 (315 SE2d 42) (1984).

Even assuming Mallory made an unequivocal request for self-representation, it was made after the jury was impaneled. A request for self-representation must be made *before* trial. The denial of such a request made after the beginning of trial is not reversible error. A defendant "cannot frivolously change his mind in midstream by asserting his right to self-representation in the middle of his trial." (Citation and punctuation omitted.) *Thaxton v. State*, 260 Ga. 141, 142 (2) (390 SE2d 841) (1990).

The record shows that Mallory was represented at trial by retained counsel who had been involved in the case for over a year prior to trial. A demand for trial was filed in October 1995, necessitating trial before the end of December 1995. OCGA §§ 17-7-170 (a); 15-6-3 (37). The lawyer had discussed the case with Mallory more than 50 times, had received complete discovery from the State, and had prepared a defense.

At trial, after a jury had been selected, Mallory indulged in a loud outburst as the prosecutor was about to give his opening statement, shouting and demanding a recess. He claimed he had hired another attorney and fired his retained trial counsel. After considering Mallory's history of disruptions dating back to arraignment, the trial court refused to grant a recess or continuance. Mallory then insisted he wished to represent himself. The court indicated that it did not believe Mallory was "competent at this point" to do so and

refused his request.[1] Mallory was given an opportunity to remain in the courtroom if he conformed his behavior to proper decorum, but he refused to do so and was removed from the courtroom.

The court instructed Mallory several times that he could return if he controlled himself, but Mallory continued to absent himself from the trial. Through counsel, who consulted with him during scheduled recesses, Mallory informed the court he refused to participate in the trial. He told the court explicitly that if he were returned, he would continue to disrupt the trial. A deputy sheriff who escorted him from the courtroom reported that Mallory was laughing, saying he knew how to prevent courts from holding trials.

At the close of the State's case Mallory was again brought into the courtroom, outside the jury's presence, and advised of his right to testify or remain silent. Mallory first indicated he wished to testify but did not want his former wife and his children in the courtroom when he did so. When the court refused to bar them, Mallory refused to participate further in the trial and requested that he be sent back to jail.

A trial court has the power and discretion "[t]o control in the furtherance of justice, the conduct of . . . all . . . persons connected with a judicial proceeding before it, in every matter appertaining thereto." OCGA § 15-1-3 (4). Mallory's behavior at trial is similar to that of the defendant in *Williams*, supra. There, because the defendant behaved in an obstreperous manner and absented himself from the courtroom, we found inapplicable the principles regarding his right to self-representation. Here, as in *Williams*, the trial court was patient and "literally 'leaned over backward' in the exercise of its duties to protect and balance the rights of the public . . . to a just and speedy determination of a criminal matter . . . against the rights of the criminal defendant to a well-prepared defense monitored by legal counsel acceptable to the defendant." Id. at 814-815. See also *Williams v. State*, 183 Ga. App. 373, 374 (1) (358 SE2d 914) (1987). The trial court did not abuse its discretion.

5. Mallory complains of the trial court's refusal to allow him to invoke the rule of sequestration at the hearing on his motion for new trial so as to bar his trial counsel from remaining in the courtroom. We need not address this enumeration, because on appeal, Mallory does not raise the issue of ineffective assistance of trial counsel. That

---

[1] The court later explained its remark as directed to Mallory's competence to *represent* himself and follow the rules, given his purposeful disruptive behavior, which the court had seen before. Mallory argues, based upon this remark, that the trial court erred in denying his counsel's request for a competency evaluation, but this contention is not enumerated as error. Even if this was error, it was harmless: the court ordered a psychological evaluation before sentencing Mallory, and the clinical psychologist who examined Mallory found him competent and sane.

was the issue at which trial counsel's testimony in the hearing was directed. Any possible error was therefore harmless.

*Judgment affirmed. Andrews, C. J., and Pope, P. J., concur.*

DECIDED MARCH 12, 1997.

*Paul J. McCord*, for appellant.

*J. Tom Morgan, District Attorney, Jeffrey H. Brickman, Robert M. Coker, Assistant District Attorneys*, for appellee.