A02A0566. JARRIEL v. THE STATE.
(565 SE2d 521)

RUFFIN, Judge.

A jury found Bryan Jarriel guilty of driving under the influence. In three enumerations of error, Jarriel challenges the sufficiency of the evidence. He also contends that the trial court erred in denying his motion to suppress. For reasons that follow, we affirm.

1. On appeal from a criminal conviction, Jarriel no longer enjoys a presumption of innocence, and we view the evidence in the light most favorable to support the jury's verdict.[1] We neither weigh the evidence nor assess witness credibility, but merely determine whether the evidence is sufficient to meet the standard set forth in *Jackson v. Virginia.*[2]

Viewed in this manner, the evidence shows that at 3:30 a.m. on March 10, 2001, State Trooper Buzz Cromer received a report that a vehicle was parked in the Blairs' front yard in Tattnall County. Cromer reached the scene in approximately 15 minutes, at which point he discovered Jarriel slouched over in a truck with his foot on the brake, the engine running, the headlights on, and the transmission in drive. After ascertaining that Jarriel was alive, but unconscious, Cromer sat Jarriel up. As Cromer did so, he "detected a very strong odor of alcoholic beverage about Mr. Jarriel." Because Jarriel was unable to walk on his own, two police officers carried him to the back of a squad car where Jarriel evidently regained consciousness and was read his implied consent rights. Cromer subsequently administered a breath test using the Intoxilyzer 5000. The machine indicated that Jarriel had a blood alcohol content of 0.12, which is above the legal limit.[3]

2. In three enumerations of error, Jarriel contends that the evidence was insufficient to support his conviction because the State failed to prove that his blood alcohol content was above the legal limit during the three-hour period after he ceased driving his truck.[4] The homeowners who discovered Jarriel did not testify, and Jarriel contends that there was thus no evidence as to when he was last in control of his truck, precluding his conviction. We disagree.

Jarriel is correct that, under OCGA § 40-6-391 (a) (5), the State was required to prove that his blood alcohol content was 0.08 or greater within three hours of driving or being in actual physical control of his truck. What Jarriel fails to acknowledge is that such offense may be proved by circumstantial evidence, which need not exclude every inference and hypothesis except guilt, but only those

---

[1] See *Vanorsdall v. State*, 241 Ga. App. 871 (1) (528 SE2d 312) (2000).

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Vanorsdall*, supra.

[3] See OCGA § 40-6-391 (a) (5), which provides that "[a] person shall not drive or be in actual physical control of any moving vehicle while . . . [t]he person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended."

[4] In Jarriel's brief, he contends that the State must prove his blood alcohol concentration was 0.10 or greater. In 2001, however, OCGA § 40-6-391 (a) (5) was amended to reduce the legal limit to 0.08.

reasonable inferences and hypotheses.[5] Whether a hypothesis is reasonable is for the jury to decide.[6]

Here, the evidence, although circumstantial, is sufficient. When police discovered Jarriel, he was passed out in the driver's seat of his truck, with the engine running, in the Blairs' front yard. At that time, his blood alcohol content was over the legal limit. The reasonable conclusion is that Jarriel was driving his truck while under the influence.[7] If not, then Jarriel must have chosen to drive onto the Blairs' yard, leave his truck running, and drink until he passed out. Evidently, the jury found the second scenario implausible, and we will not gainsay that finding.

Similarly, we are not troubled by the lack of direct evidence regarding the exact timing of the event. The evidence shows that police received the call regarding Jarriel at 3:30 a.m., and Cromer responded within 15 minutes. Although the Blairs did not testify, it is reasonable to assume that they called the police in response to Jarriel driving onto their front yard. What Jarriel would have us believe is that he drove onto the Blairs' yard sometime before 12:45 a.m. — three hours before Cromer first saw him behind the wheel of his truck — and that the Blairs just happened to wake up at 3:30 a.m., look out their window, and discover him in their front yard. Again, the jury was authorized to reject the second scenario. It follows that the evidence of Jarriel's guilt was sufficient to sustain his conviction.

3. Jarriel also contends that the trial court erred in failing to suppress the results of his breath test because it was not performed in accordance with approved methods. Under OCGA § 40-6-392 (a) (1) (A), any chemical analysis, including breath tests, must be "performed according to methods approved by the Division of Forensic Sciences of the Georgia Bureau of Investigation" (GBI). During the motion to suppress, Jarriel tendered a memorandum from the Division of Forensic Sciences to "All Breath Testing Agencies" stating that:

> Rules of the [GBI] . . . require a periodic check be made of each instrument performing breath alcohol tests to assure proper calibration of every breath testing device. . . . Presently, all Intoxilyzer 5000 instruments are checked quarterly by personnel assigned to the Implied Consent Section

---

[5] See *Deering v. State*, 244 Ga. App. 30, 31 (1) (535 SE2d 4) (2000).

[6] See *Pecina v. State*, 274 Ga. 416, 419 (2) (554 SE2d 167) (2001).

[7] See id.; *Johnson v. State*, 194 Ga. App. 501-502 (1) (391 SE2d 132) (1990). See also *Schoolfield v. State*, 251 Ga. App. 52, 54 (1) (554 SE2d 181) (2001) ("[i]t is well settled that being found slumped over the steering wheel with the engine running constitutes" circumstantial evidence of driving under the influence).

of the Division of Forensic Sciences. This quarterly check will [assure] compliance with the Rules cited.

Evidently, the Intoxilyzer 5000 had not been inspected since October 6, 2000, approximately five months before Jarriel was tested on the machine. According to Jarriel, because the machine had not been tested quarterly, the results of the test should have been suppressed. We disagree.

Initially, it is unclear that the memorandum Jarriel tendered constitutes a method approved by the GBI.[8] Assuming, for the sake of argument, that it is such a method, we find no basis for reversal.

Although it appears that this is an issue of first impression, a similar argument has been made with respect to the GBI requirement that a testing officer observe a suspect for 20 minutes prior to administering a breath test.[9] Rather than requiring exact compliance with GBI rules, we have upheld the admission of test results when the State has shown substantial compliance with the rules.[10] Any deviation from such rule goes to the weight of the evidence, rather than its admissibility.[11]

Here, the State proved substantial compliance with the requirement that the Intoxilyzer 5000 undergo periodic testing.[12] The machine used on Jarriel had been tested on October 6, 2000, and on March 26, 2001. According to the inspection certificates, the machine functioned properly on both occasions. And Cromer, who is certified to administer breath tests, testified that the Intoxilyzer 5000 was functioning properly when he performed the test on Jarriel. Under these circumstances, we find no error in the trial court's denial of Jarriel's motion to suppress.

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED MAY 9, 2002.

*Mitchell M. Shook*, for appellant.
*Wensley Hobby, Solicitor-General*, for appellee.

---

[8] See *Klink v. State*, 272 Ga. 605, 607 (2) (533 SE2d 92) (2000) (questioning whether requirement for 20-minute wait before testing constitutes an approved method).

[9] See *Brunson v. State*, 248 Ga. App. 402, 403 (1) (544 SE2d 217) (2001); *Berkow v. State*, 243 Ga. App. 698, 699-701 (534 SE2d 433) (2000) (physical precedent only).

[10] See id. at 701; *Brunson*, supra at 404.

[11] *Berkow*, supra at 701.

[12] See OCGA § 40-6-392 (a) (1) (A).