## A06A1060. PALMAKA v. THE STATE.
(634 SE2d 883)

MIKELL, Judge.

This is the second appearance of this DUI case before this Court. In *State v. Palmaka*[1] (*"Palmaka I"*), we reversed the grant of Kasia C. Palmaka's motion to suppress the results of her breath test, holding that the state satisfied its burden, under OCGA § 40-6-392 (a) (1) (A), of proving that the test, which was performed on an Intoxilyzer 5000, was conducted in accordance with methods adopted by the Division of Forensic Sciences of the Georgia Bureau of Investigation (the "DFS"), and that any deviation from the operator's manual affected the weight and not the admissibility of the results.[2] We further held that the practice of waiting 20 minutes between taking samples, as outlined in the manual, was not part of the approved methods of testing which must be satisfied in order to render the results admissible,[3] disapproving of language to the contrary in *Casey v. State*.[4] We noted that *Casey* was decided before the DFS promulgated Ga. Comp. R. & Regs. r. 92-3-.06 (12) (b) ("Rule (12) (b)"), which provides that "administrative, procedural, and/or clerical steps performed in conducting a test shall not constitute a part of the approved method of analysis."[5] In *State v. Naik*,[6] we took judicial notice of Rule (12) (b).[7] Thus, in *Palmaka I*, a whole-court decision, we determined that *Casey*, in which we held that the trial court erred in admitting breath test results where the officer testified that he did not wait 20 minutes between samples, was inconsistent with both Rule (12) (b) and *Naik*.

Following our reversal of Palmaka's motion to suppress the results of her breath test, the case proceeded to a bench trial. The parties stipulated that the test was administered in compliance with OCGA § 40-6-392 (a) (1) (A). The test results were then admitted into evidence. They reflect that two breath samples were obtained from Palmaka; the results were 0.116 and 0.120, respectively. The former officer[8] who tested Palmaka testified that initially, she did not blow into the machine properly, resulting in an invalid sample; that based on his training, he was supposed to wait twenty minutes to perform another test but only waited seven minutes; and that the test results

---

[1] 266 Ga. App. 595 (597 SE2d 630) (2004).

[2] Id. at 597.

[3] Id.

[4] 240 Ga. App. 329, 331 (3), n. 1 (523 SE2d 395) (1999).

[5] (Punctuation omitted.) *Palmaka I*, supra, citing Rule (12) (b).

[6] 259 Ga. App. 603 (577 SE2d 812) (2003).

[7] Id. at 604.

[8] The transcript reflects that the witness has left the police force and now testifies as an expert for defense attorneys, including Palmaka's attorney.

could have been compromised by his failure to wait twenty minutes. He testified that the reason for the waiting period is to ensure that residual mouth alcohol had dissipated. On redirect examination, however, the officer testified that if, as happened here, the two test results are within 0.02 grams of each other, then mouth alcohol likely has not contaminated the sample.

The court adjudicated Palmaka guilty of violating OCGA § 40-6-391 (a) (5), which, prior to its amendment in 2001, prohibited having an alcohol concentration of 0.10 grams or more within three hours after being in actual physical control of a moving vehicle. The court gave weight and credit to the state-administered breath test results based on testimony that the small margin between the two samples was a strong indicator that no residual mouth alcohol contaminated the results.

Palmaka filed a motion for a new trial. In an amended motion, Palmaka argued that Rule (12) (b) violated the due process rights of citizens arrested for DUI in that it eliminated meaningful procedures for conducting breath tests. The court denied the motion, ruling that the elimination of "administrative, procedural, and/or clerical steps performed in conducting a test" from the approved methods for testing did not create a system which eliminated safeguards for the accuracy and reliability of the tests, in violation of the Due Process Clause of either the Fifth Amendment to the United States Constitution or Ga. Const. of 1983, Art. I, Sec. I, Par. I. Palmaka appealed to the Supreme Court, which transferred the appeal to this Court, stating in its order that the case did not fall within its jurisdiction because it does not raise any issue regarding the constitutionality of "a law, ordinance, or constitutional provision."[9] Rule (12) (b) is not a "law, ordinance, or constitutional provision"; it is a regulation promulgated in accordance with the Georgia Administrative Procedure Act ("APA").[10]

In her appellate brief, Palmaka concedes that she raised the constitutional issues for the first time in an amended motion for new trial. "It is settled law that issues concerning the validity and constitutionality of statutes and regulations must be raised at the first opportunity."[11] It has been held, for example, that it is too late to raise a challenge to the constitutionality of a statute after a guilty verdict has been returned by the jury.[12] We see no reason to deviate

---

[9] Ga. Const. of 1983, Art. VI, Sec. VI, Par. II.

[10] OCGA § 50-13-1 et seq.

[11] (Punctuation omitted.) *State v. Chumley*, 164 Ga. App. 828, 829 (4) (299 SE2d 564) (1982) (Department of Public Safety rules and regulations), citing *Shelton v. Housing Auth. of the City of Atlanta*, 122 Ga. App. 535-536 (4) (177 SE2d 832) (1970) (superior court rule).

[12] *Kolokouris v. State*, 271 Ga. 597 (1) (523 SE2d 311) (1999); *Verlangieri v. State*, 273 Ga.

from this rule in the instant case, where a regulation was first attacked following the trial court's adjudication of guilt. It follows that Palmaka's challenge has not been preserved for appellate review.

In addition, because the regulation at issue was duly promulgated under the APA, Palmaka had an alternative remedy. "As an allegedly aggrieved individual, [Palmaka] had an available administrative remedy and could have contested the validity of the rules or procedures at issue by filing an action for a declaratory judgment. OCGA § 50-13-10. See also OCGA § 50-13-19."[13]

Finally, even if the constitutional challenge had been timely raised, we would reject it. Palmaka asserts that the absence of procedures which must be followed in the performance of the testing "renders the entire testing system vague and in violation of basic [d]ue [p]rocess protections." The only authority cited in support of this sweeping proposition is *Botts v. State*,[14] in which the Supreme Court held that OCGA § 17-10-17, the statute which permitted enhanced punishment for hate crimes, was unconstitutionally vague because it failed to provide fair warning of the proscribed conduct, in violation of the due process clauses of the federal and state constitutions.[15] Rule (12) (b) prohibits no conduct and thus cannot be compared to the statute struck down in *Botts*. That case is wholly inapposite.

Moreover, Palmaka has failed to demonstrate that the DFS eliminated meaningful procedures for conducting breath tests when it promulgated Rule (12) (b). The rule states only that "[a]dministrative, procedural, and/or clerical steps performed in conducting a test shall not constitute a part of the approved method of analysis." Other requirements predating this amendment remain; namely, that the test must be performed on an Intoxilyzer 5000 manufactured by CMI, Inc.; that the operator must have a valid permit, which must be displayed conspicuously where the test is performed or available for display upon request; and that the machine must be checked periodically for calibration and operation.[16] The rules also mandate that Intoxilyzer 5000 operators attend a breath analysis certification course.[17]

---

App. 585, 588 (1) (a) (615 SE2d 633) (2005); *Hughes v. State*, 266 Ga. App. 652, 654 (2) (598 SE2d 43) (2004).

[13] *Rowell v. State*, 229 Ga. App. 397, 398 (1) (a) (494 SE2d 5) (1997) (recognizing Ga. Comp. R. & Regs. r. 92-3-.06 as embodying methods for breath tests approved by the DFS).

[14] 278 Ga. 538 (604 SE2d 512) (2004).

[15] Id. at 539-540.

[16] See Ga. Comp. R. & Regs. r. 92-3-.06 (5), (6), (12) (a).

[17] See Ga. Comp. R. & Regs. r. 92-3-.02 (2) (e); r. 92-3-.06 (12) (a) (2).

Palmaka's contentions are similar to those we rejected in *Dougherty v. State*.[18] In that case, the appellant argued that his breath test results should have been suppressed because the state failed to prove that the DFS promulgated satisfactory techniques and methods for breath testing, as required by OCGA § 40-6-392 (a) (1) (A).[19] He essentially complained that the DFS rules were inadequate because they did not describe in sufficient detail the procedures used to operate and maintain the Intoxilyzer 5000.[20] We specifically found that the techniques and methods approved by the DFS were sufficient to ensure fair and accurate testing.[21] "We further note[d] that OCGA § 40-6-392 (a) (1) (A) provides only for the admissibility of the test results. A defendant remains free to challenge the weight and credibility of that evidence before the jury."[22] *Dougherty* is apposite and controlling. Palmaka's conviction is affirmed.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JULY 27, 2006 — ▮

*Charles T. Magarahan*, for appellant.

*Thurbert E. Baker, Attorney General, Gerald N. Blaney, Jr., Solicitor-General, Gary S. Vey, Assistant Solicitor-General*, for appellee.

