A07A0547. O'CONNELL v. THE STATE.
(648 SE2d 147)

ADAMS, Judge.

Autrey O'Connell contends there was no direct evidence and insufficient circumstantial evidence to support his convictions of having a blood alcohol concentration of 0.08 grams or more within three hours of driving and of driving under the influence of alcohol to the extent that it was less safe for him to drive. He also contends his trial counsel was ineffective.

The evidence presented at the bench trial shows that at about 9:00 p.m. on October 19, 2005, the Cherokee County 911 office received a report of an intoxicated driver. Within two or three minutes, officers were dispatched to a certain residence at a mobile home park. Officer Knudsen of the Cherokee County Sheriff's Office responded and went to the given location to look for a gray Ford Thunderbird with a possible drunk driver at Lot No. 74. She testified there were no vehicles present when she arrived at approximately 9:00 p.m., so she left the scene.

Officer Gianfala responded to a second dispatch at about 9:19 to look for a gray Thunderbird that was supposedly parked at the location. Gianfala found the car and by touching it determined that it was warm and had therefore not been there long. He knocked on the door of the home, and the defendant, who was alone, answered. After explaining why he was there, Gianfala invited O'Connell outside; O'Connell responded that the officer could come in. But the door was secured with a device that prevented it from opening enough to let the officer enter. Gianfala turned on his flashlight and observed that O'Connell was swaying, had bloodshot eyes, and was slurring his speech as he struggled to get the door open. O'Connell finally admitted that he could not open the door, and he invited Gianfala to come around to the back, which the officer did. O'Connell then changed the subject, and tried to get Gianfala to watch a videotape, which he played very loudly.

At some point Officer Knudsen returned. At trial she confirmed O'Connell's car had not been present when she first came by.

Once the volume was lowered, Gianfala asked O'Connell if he had been driving the grey Thunderbird and whether he had been drinking. O'Connell said that he had. O'Connell also smelled of alcohol from his breath and body. He would ramble so much that it

was hard to make sense of what he was saying and he was belligerent. He claimed that he had consumed two or three drinks, and when challenged on this he refused to answer. He also claimed that someone else had also driven his car but he never responded to questions concerning the identity of the alleged driver. Based on the officer's training and experience, he concluded that O'Connell was highly intoxicated and less safe to drive. He also determined that O'Connell had been driving because O'Connell said he had been, the Thunderbird had only recently arrived at the scene, the engine was warm, and O'Connell gave him the keys to the car. O'Connell refused to submit to any field sobriety evaluations.

As a result, Gianfala decided to arrest O'Connell, and the arrest occurred outside in front of the patrol car so that the event would be recorded on video, which was introduced into evidence and played at trial. After being read the implied consent notice, O'Connell refused to take the State breath test. Gianfala took him to the Cherokee County jail, where O'Connell apparently changed his mind and took the breath test, which registered 0.217 blood alcohol concentration between 10:12 and 10:16 p.m.

1. The standard for reviewing the sufficiency of the evidence is whether, construed in favor of the verdict, the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Although circumstantial, the evidence was sufficient to convict O'Connell for the two crimes.

(a) There was sufficient circumstantial evidence to show that his blood alcohol level exceeded the legal limit within three hours of the time that he was in actual physical control of a vehicle resulting from alcohol that he consumed prior to driving. See OCGA § 40-6-391 (a) (5). O'Connell admitted drinking and driving. And a warm engine can be sufficient to show that the defendant had been driving recently enough to satisfy the three-hour requirement of the statute. See *Jarriel v. State*, 255 Ga. App. 305, 307 (2) (565 SE2d 521) (2002); *Goddard v. State*, 244 Ga. App. 730, 732 (1) (536 SE2d 160) (2000). Compare *Norton v. State*, 280 Ga. App. 303, 304 (640 SE2d 48) (2006) (insufficient evidence that defendant had driven vehicle within three hours of the blood alcohol concentration test). Moreover, there was sufficient circumstantial evidence that O'Connell drank before driving given his degree of intoxication less than 20 minutes after driving.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. Here, the only other hypothesis offered is that although O'Connell had been drinking and driving, someone else had been doing the driving within the last hour or so and

O'Connell had become intoxicated after he ceased driving. But it is the trier of fact who decides whether any alternate hypothesis is "reasonable" under the circumstances. See *Green v. State*, 244 Ga. App. 565, 566 (536 SE2d 240) (2000). "And when the [trier of fact] *rejects* an alternative hypothesis in favor of the State's evidence of guilt, this Court is not authorized to reweigh the evidence, and we will not reverse unless the verdict of guilty is unsupportable as a matter of law. [Cit.]" (Emphasis in original.) Id.

(b) "The crime of driving while under the influence to the extent that it is less safe to drive does not require proof that a person actually committed an unsafe act while driving; rather, it requires showing three elements: (1) driving, (2) under the influence of alcohol, (3) to the extent that it is less safe for the person to drive." *Lee v. State*, 280 Ga. App. 706, 707 (634 SE2d 837) (2006). "Circumstantial evidence may be sufficient to meet this burden of proof." (Citations omitted.) *Self v. State*, 232 Ga. App. 735, 736 (2) (503 SE2d 625) (1998). Here, O'Connell admitted drinking, and there was circumstantial evidence that he had been driving within 20 minutes of Gianfala's arrival at the scene. Finally, Gianfala observed many signs of intoxication and concluded that O'Connell was not safe to drive. On cross-examination, Gianfala admitted that he did not know when O'Connell had started drinking. But in Gianfala's opinion, it was highly unlikely that O'Connell could be showing the signs of intoxication that he did if he had only been drinking for the 20 minutes after he ceased to drive. The evidence was sufficient. See, e.g., *Stephens v. State*, 271 Ga. App. 634, 635-636 (610 SE2d 613) (2005); *Martin v. State*, 216 Ga. App. 25 (453 SE2d 498) (1995).

2. O'Connell contends his trial counsel was ineffective in two ways. When considering claims of ineffective assistance of counsel, Georgia appellate courts will uphold a trial court's findings of fact unless they are clearly erroneous but review legal conclusions de novo. *Hunter v. State*, 281 Ga. 526 (640 SE2d 271) (2007); *Cherry v. State*, 283 Ga. App. 700 (642 SE2d 369) (2007).

O'Connell first contends that trial counsel was operating under the erroneous legal theory that the State could not convict him with circumstantial evidence alone. But a review of the transcript of the hearing on the motion for new trial shows that O'Connell has misconstrued trial counsel's testimony. Counsel only testified that the lack of direct evidence was "a major weakness" in the State's case and that her theory of the case was that no one had seen him driving and that no one could prove when he started drinking. Counsel never stated that she did not believe it was legally possible to convict on circumstantial evidence alone. Rather, it would appear that her strategy was to convince the court that insufficient circumstantial evidence had been presented.

Second, O'Connell contends trial counsel was ineffective by failing to hire an expert to testify that it was possible for O'Connell to have become intoxicated in a manner consistent with the testimony without violating any laws. During the hearing on the motion for new trial, O'Connell testified that he began "gulping" straight bourbon shortly after 9:00 p.m. and continued for the 20 minutes before Officer Gianfala arrived, during which time he consumed almost the entire fifth. He also offered expert testimony to the effect that a person of O'Connell's weight could begin gulping bourbon at 9:00 p.m. and reach a blood alcohol level of 0.217 by 10:12 p.m., and that he would show visible signs of intoxication within 20 to 30 minutes. But on cross-examination, the expert directly refuted a key part of O'Connell's testimony. She testified that he could not have drunk an entire fifth in 20 minutes because it would be a lethal dose for someone of that size.

Furthermore, counsel testified that if she had offered an expert the State would have responded with a similar expert. She had stipulated to the admission of blood alcohol results in order to keep the State's expert from testifying. She did not want to get into a battle of experts about how quickly O'Connell could become intoxicated, and she made a tactical decision to focus on the lack of direct evidence that O'Connell had been drinking and driving. She testified, "If the State [was] not going to put forward any testimony about when he started drinking, I didn't feel like I needed to refute that." The trial court accepted trial counsel's explanation of her strategy.

It is well established that "[d]eciding which defense witnesses to call is a matter of trial strategy and tactics." *Bruce v. State*, 268 Ga. App. 677, 679-680 (603 SE2d 33) (2004). See also *Walker v. State*, 281 Ga. 521, 526 (640 SE2d 274) (2007). And, generally, matters of strategy and tactics, "whether wise or unwise, [do] not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Berry v. State*, 267 Ga. 476, 482 (4) (i) (480 SE2d 32) (1997). It is true that counsel should consult with their client regarding such decisions, but O'Connell did not present any direct testimony to show that counsel failed to consult with O'Connell on this point, and counsel did testify that they discussed "possible defenses and alibis," and "all the things I would typically discuss with a criminal client in a case like [this]." Thus, we cannot say that the trial court's decision that O'Connell received effective assistance of counsel was clearly erroneous.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 14, 2007.

*John V. Kuruvilla*, for appellant.

*David L. Cannon, Jr., Solicitor-General, Kelly F. Gray, Assistant Solicitor-General,* for appellee.