## A08A0920. HOLSEY v. THE STATE.
### (661 SE2d 621)

BLACKBURN, Presiding Judge.

Following a jury trial, Jarael Holsey was convicted on one count of armed robbery,[1] one count of kidnapping,[2] and two counts of aggravated assault.[3] He appeals his conviction and the denial of his motion for new trial, (i) challenging the sufficiency of the evidence and further arguing that the trial court erred in (ii) denying his request for an appointment of new trial counsel and (iii) failing to find that he received ineffective assistance of counsel. For the reasons set forth below, we affirm Holsey's conviction.

1. Holsey contends that the evidence was insufficient to support his conviction. We disagree. "On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [Holsey] no longer enjoys a presumption of innocence." (Punctuation omitted.) *Berry v. State*.[4] When evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. *Jackson v. Virginia*.[5]

So viewed, the record shows that shortly after midnight on June 12, 2005, the manager of a local Arby's fast food restaurant and one of his female employees had finished closing the restaurant for the night and were getting ready to go home. As the manager and the employee got into the manager's car, they were confronted by Holsey

---

[1] OCGA § 16-8-41 (a).
[2] OCGA § 16-5-40 (a).
[3] OCGA § 16-5-21 (a) (2).
[4] *Berry v. State*, 274 Ga. App. 831 (1) (619 SE2d 339) (2005).
[5] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

and another male, who were brandishing pistols and demanding money. When the manager claimed that he had no money, Holsey pointed the pistol at the manager's head, forced him out of the car, and ushered him back toward the restaurant. Meanwhile, Holsey's accomplice remained near the car with the employee while holding his pistol to her side and ordering her to keep quiet. Back at the restaurant, Holsey ordered the manager to unlock the door and threatened to shoot him if he activated the security alarm. Once inside, he ordered the manager to open the restaurant's safe, while continuing to threaten him, and took approximately $375 as well as the manager's cellular telephone. After leaving the restaurant, Holsey and his accomplice ran to an adjacent parking lot and fled from the area in a car that had been parked in that lot.

Following the robbery, the manager and the employee went back into the restaurant, locked the door, and called the police. When the police arrived, the employee informed them that she recognized one of the robbers as Holsey, whom she knew as a friend from high school. In fact, later that night, the employee received a call on her cellular phone from a number, which she had programmed into her phone under Holsey's name. The employee did not answer the call, but the next day she told the police of Holsey's attempt to call her. At the request of the police, the employee called Holsey and attempted to get him to admit to the robbery, but he denied any involvement.

Holsey was arrested a few days after the robbery and, during an interview with police, admitted participating in the crime. He was later indicted on one count of armed robbery, one count of kidnapping, and two counts of aggravated assault. At trial, the restaurant manager and the employee testified regarding the details of the robbery, and the employee further testified that she was able to identify Holsey as one of the robbers based on having been friends with him in high school. The State also introduced an audiotape of the police interview with Holsey, which was played for the jury. In addition, Holsey's accomplice, who had recently pled guilty to the robbery, testified regarding his and Holsey's involvement in the crime. At the trial's conclusion, the jury found Holsey guilty on all counts. Holsey filed a motion for new trial, which was amended after he obtained new counsel. The trial court held a hearing on Holsey's amended motion and subsequently denied it. This appeal followed.

Under OCGA § 16-8-41 (a),

[a] person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon.

OCGA § 16-5-21 (a) (2) provides that "[a] person commits the offense of aggravated assault when he or she assaults: . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." In addition, OCGA § 16-5-40 (a) provides that a "person commits the offense of kidnapping when he abducts or steals away any person without lawful authority or warrant and holds such person against his will." "The distance which a kidnapper abducts his victim is without legal significance under Georgia law. Only the slightest movement of the victim is required to constitute the necessary element of asportation." (Footnote omitted.) *Boykin v. State*.[6]

Here, the evidence showed that Holsey was identified by the restaurant employee as one of two perpetrators who confronted her and her manager at gunpoint and threatened to shoot them if they did not comply with his demand for money. The evidence also showed that Holsey forced the manager out of his car at gunpoint, ordered him back across the parking lot and into the restaurant, and stole over $300 from the restaurant's safe, as well as a cellular phone, before fleeing. Thus, there was sufficient evidence to support Holsey's convictions on the count of armed robbery, both counts of aggravated assault, and the count of kidnapping. See *Bryant v. State*;[7] *Lattimore v. State*;[8] *Boykin*, supra, 264 Ga. App. at 839 (1) (evidence that defendant moved victim from inside of vehicle to the ground outside of vehicle sufficiently supported kidnapping conviction).

2. Holsey contends that the trial court erred in refusing to appoint new trial counsel after Holsey made it known that he was dissatisfied with his current trial counsel and had filed a bar complaint against him. We disagree.

"The Sixth Amendment guarantees effective assistance of counsel, not preferred counsel or counsel with whom a meaningful relationship can be established." (Punctuation omitted.) *McCoy v. State*.[9]

> An indigent defendant is not entitled to have his appointed counsel discharged unless he can demonstrate justifiable dissatisfaction with counsel, such as conflict of interest, an

---

[6] *Boykin v. State*, 264 Ga. App. 836, 839 (1) (592 SE2d 426) (2003).

[7] *Bryant v. State*, 286 Ga. App. 493, 495 (1) (a) (649 SE2d 597) (2007).

[8] *Lattimore v. State*, 282 Ga. App. 435, 436 (1) (638 SE2d 848) (2006).

[9] *McCoy v. State*, 285 Ga. App. 246, 250 (5) (645 SE2d 728) (2007).

irreconcilable conflict, or a complete breakdown in communication between counsel and client.

(Punctuation omitted.) *Johnson v. State*.[10] "[W]here a defendant does not have a good reason for discharging his court-appointed attorney, the trial court does not err in requiring him to choose between representation by that attorney and proceeding pro se." *Wyman v. State*.[11] We evaluate a trial court's decision regarding whether to appoint new trial counsel for an indigent defendant under an abuse of discretion standard. *McCoy*, supra, 285 Ga. App. at 250 (5).

In this matter, two months before trial, a hearing was held in which Holsey informed the trial court that he was dissatisfied with his trial counsel because counsel allegedly had not communicated with him for several months. Holsey further informed the court that he had filed a bar complaint against his counsel based on that dissatisfaction. However, trial counsel responded that he had been diligently preparing the case and that he was ready to go to trial despite the fact that Holsey had filed a grievance against him. The trial court requested that trial counsel communicate with Holsey more frequently but was satisfied that there was no conflict or complete breakdown in communication warranting appointment of new counsel. Consequently, the trial court gave Holsey the choice between keeping his current trial counsel or proceeding pro se. Holsey chose to proceed with his current counsel. Given these circumstances, we find that the trial court did not abuse its discretion in denying Holsey's request for appointment of new trial counsel. See *Johnson*, supra, 283 Ga. App. at 528-529 (5) (trial court did not abuse its discretion in refusing to appoint new counsel based on lack of communication between defendant and counsel on key strategic trial decision).

3. Holsey contends that the trial court erred in failing to find that he received ineffective assistance of counsel, arguing that his trial counsel performed deficiently in failing to call certain defense witnesses, in failing to withdraw as counsel after Holsey filed a bar complaint against him, and in failing to present evidence in Holsey's defense.

To establish ineffective assistance of counsel under *Strickland v. Washington*,[12] a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists

---

[10] *Johnson v. State*, 283 Ga. App. 524, 528 (5) (642 SE2d 170) (2007).

[11] *Wyman v. State*, 267 Ga. App. 118, 119-120 (1) (598 SE2d 855) (2004).

[12] *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984).

that the result of the trial would have been different but for that deficiency. *Mency v. State*.[13] "Making that showing requires that [Holsey] rebut the strong presumption that [his] lawyer's conduct falls within the wide range of reasonable professional assistance." *Simpson v. State*.[14] We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the *Strickland* test unless clearly erroneous. *Rose v. State*.[15]

(a) Holsey first contends that his trial counsel performed deficiently by failing to call three of his acquaintances (Roland, Workman, and Thornton), who allegedly had relevant information about the case, to testify as witnesses at trial. Specifically, he argues that two of these potential witnesses (Roland and Workman) would have testified that Holsey's role in the armed robbery was minimal and further argues that the third (Thornton) would have testified to being the person who forced the manager back into the restaurant at gunpoint. This contention is without merit.

At the motion for new trial hearing, Holsey's trial counsel testified that he recalled that two of the mentioned witnesses (Roland and Workman) were present on the first day of trial but that he decided against having them testify because they informed him that morning that Holsey had previously admitted to them that he was involved in the crime. "It is well established that deciding which defense witnesses to call is a matter of trial strategy and tactics." (Punctuation omitted.) *O'Connell v. State*.[16] It is equally well established that "[t]rial tactics and strategy, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Punctuation omitted.) *Abernathy v. State*.[17] Holsey has failed to show that counsel's strategy of not calling witnesses whose testimony would have been harmful was patently unreasonable. See *Bradford v. State*.[18] Furthermore, Holsey did not provide any evidence, beyond his own speculation, as to how any of the three uncalled witnesses would have testified at trial. "Because [Holsey] failed to make any proffer of the uncalled witness[es'] testimony, it is impossible for [Holsey] to show there is a reasonable probability the results of the proceedings would have been different." (Punctuation

---

[13] *Mency v. State*, 228 Ga. App. 640, 642 (2) (492 SE2d 692) (1997).
[14] *Simpson v. State*, 278 Ga. 336, 337 (2) (602 SE2d 617) (2004).
[15] *Rose v. State*, 258 Ga. App. 232, 234-235 (2) (573 SE2d 465) (2002).
[16] *O'Connell v. State*, 285 Ga. App. 835, 838 (2) (648 SE2d 147) (2007).
[17] *Abernathy v. State*, 278 Ga. App. 574, 587 (3) (b) (v) (630 SE2d 421) (2006).
[18] *Bradford v. State*, 221 Ga. App. 232, 235 (3) (a) (471 SE2d 248) (1996).

omitted.) *Duvall v. State*.[19] See *Dickens v. State*.[20] Accordingly, the trial court did not clearly err in finding that Holsey failed to carry his burden of proving that trial counsel's failure to call these witnesses constituted ineffective assistance.

(b) Holsey also contends that his trial counsel performed deficiently by failing to withdraw as counsel despite the existence of a conflict of interest. Specifically, Holsey argues that trial counsel should have withdrawn as his counsel after learning that Holsey had filed a bar complaint against him based on his dissatisfaction with his representation. We disagree. "In order for a criminal defendant to prevail on a claim that his attorney was ineffective due to a conflict of interest, he must show that an actual conflict of interest adversely affected his lawyer's performance." *Daguilar v. State*.[21] Furthermore, "[t]he conflict of interest must be palpable and have a substantial basis in fact. A theoretical or speculative conflict will not impugn a conviction which is supported by competent evidence." (Punctuation omitted.) Id.

Here, Holsey argues that his loss of trust and confidence in his trial counsel, which culminated in his filing of a bar grievance, created a conflict of interest that should have resulted in his counsel's withdrawal. However, at the hearing on Holsey's motion for new trial, his trial counsel testified that he was aware of the bar complaint but was not offended by it and that it did not undermine his ability to effectively represent Holsey. Thus, as evidence supported its determination, the trial court did not clearly err in finding that Holsey failed to carry his burden of proving that trial counsel's refusal to withdraw constituted ineffective assistance. See *Daguilar*, supra, 275 Ga. App. at 759; *Williams v. State*[22] (defendant's threat to sue trial counsel and dissatisfaction with trial counsel's strategy did not constitute evidence that the attorney-client relationship had deteriorated such that counsel was unable to be effective).

(c) Holsey further contends that his trial counsel performed deficiently by failing to generally present evidence in Holsey's defense. However, Holsey makes no argument as to the specific evidence his trial counsel allegedly should have presented. "The failure of trial counsel to employ evidence cannot be deemed 'prejudicial' in the absence of a showing that such evidence would have been relevant and favorable to the defendant." (Punctuation omitted.) *Woods v. State*.[23] Because Holsey has failed to make any proffer

---

[19] *Duvall v. State*, 273 Ga. App. 143, 145 (3) (b) (614 SE2d 234) (2005).
[20] *Dickens v. State*, 280 Ga. 320, 323 (2) (627 SE2d 587) (2006).
[21] *Daguilar v. State*, 275 Ga. App. 756, 759 (2) (621 SE2d 846) (2005).
[22] *Williams v. State*, 273 Ga. App. 213, 218 (3) (c) (614 SE2d 834) (2005).
[23] *Woods v. State*, 275 Ga. 844, 850 (3) (d) (573 SE2d 394) (2002).

of the evidence that allegedly should have been presented, "it is impossible for [Holsey] to show there is a reasonable probability the results of the proceedings would have been different." (Punctuation omitted.) Id. Accordingly, the trial court did not err in finding that Holsey failed to carry his burden of proving that trial counsel's failure to present evidence was ineffective.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED APRIL 17, 2008.

*Justin J. Wyatt, Gina A. Smalley,* for appellant.
*Patrick H. Head, District Attorney, John R. Edwards, Assistant District Attorney,* for appellee.