**FIRST DIVISION
ELLINGTON, C. J.,
PHIPPS, P. J., and DILLARD, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**March 28, 2013**

# In the Court of Appeals of Georgia

A12A2454. THE STATE v. GAGGINI.

PHIPPS, Presiding Judge.

The state appeals from a trial court order granting Alexandra Gaggini's motion to suppress the results of an Intoxilyzer 5000 breath test obtained at the time of her arrest for unlawfully stopping, standing, or parking on a roadway, and driving under the influence. After her arrest, the state filed an accusation charging Gaggini with driving under the influence of alcohol with an unlawful blood-alcohol concentration ("DUI per se"),[1] driving under the influence of alcohol to the extent that it was less safe for her to drive ("DUI less safe"),[2] and improper stopping, standing, or parking

---

[1] OCGA § 40-6-391 (a) (5).

[2] OCGA § 40-6-391 (a) (1).

on a roadway.[3] The state contends that the trial court erred in excluding the Intoxilyzer test results because the arresting officer properly read the appropriate implied consent warning. As to the DUI per se charge, the state contends that the trial court erred in basing its ruling, in part, on a finding that there was no admissible evidence that Gaggini had driven within three hours of consuming alcohol. We agree with the state and reverse.

> In cases involving the review of the grant of a motion to suppress or motion in limine, we must construe the evidence most favorably to uphold the findings and judgment of the trial court, and that court's findings as to disputed facts and credibility must be adopted unless clearly erroneous. Where the evidence at a hearing on the motion is undisputed and no question regarding the credibility of witnesses is presented, we review the trial court's ruling to ensure that there was a substantial basis for it. The trial court's application of the law to undisputed facts is subject to de novo review.[4]

At the hearing on Gaggini's motion to suppress, two police officers testified. The first was an officer on patrol who, although not dispatched to the scene of the incident, was close by and responded to the scene within "a couple of minutes" of the

---

[3] OCGA § 40-6-203 (a).

[4] *State v. Peirce*, 257 Ga. App. 623-624 (571 SE2d 826) (2002) (footnotes omitted).

call; the second was an officer on the DUI task force, who arrived at the scene soon after the first responding officer and arrested Gaggini. At 3:49 a.m. on February 26, 2011, the first officer responded to a call from dispatch about an "unknown medical problem in reference to a female slumped over in a vehicle in the roadway stopped." The officer testified that when he arrived on the scene, he observed a vehicle on the side of the road; two individuals were standing near the vehicle and a female was sitting inside the vehicle.

At the scene, the officer spoke with the complainant, who, according to the officer, told him the following. Approximately 25 minutes before the complainant called the police, the complainant had passed the vehicle which was stopped at a traffic light. When the complainant was returning from her destination, she again came across the vehicle, still stopped in the same position as when she had first seen it. The complainant and another individual walked to the vehicle, and before the officer arrived on the scene, they awakened the driver, who had been asleep at the steering wheel at the light. The driver started to drive away but the complainant and the other individual stopped her and "had her pull over to the side of the road." At that time, the first responding officer arrived at the scene.

3

The officer testified that when he arrived at the scene, the vehicle was "off to the side of the road . . . kind of parked up on the curb." The officer identified Gaggini as the person who was seated in the driver's seat of the vehicle. The officer testified that as he arrived at the driver's side door and began talking with Gaggini, her speech was slurred, and he smelled an odor of alcohol coming from the vehicle. Gaggini told the officer that she had been to a bar with some friends and that she had consumed an alcoholic beverage. The officer obtained from Gaggini a driver's license. No one was in the vehicle with Gaggini. The DUI task force officer who ultimately effectuated the arrest of Gaggini arrived and took over the investigation.

The arresting officer testified that as he arrived at the scene, he observed a vehicle "half on the curb, half on the roadway." He spoke with the first responding officer about the situation. The arresting officer then approached the vehicle. He testified that the driver, whom he also identified as Gaggini, was "sitting in the driver's seat of the vehicle. The keys were in the ignition. It wasn't running but all the lights and dashboard were on. . . . She was leaning forward between the seat and the steering wheel and she was swaying back and forth." The arresting officer testified that he noticed a strong odor of alcohol coming from the vehicle. He testified that Gaggini's speech was slow and slurred, and that her eyes were bloodshot and had a

glazed look. The arresting officer asked Gaggini to step out of the vehicle, and she swayed as she complied. As Gaggini talked to the officer, he noticed a strong odor of alcohol coming from her breath and person. He concluded that Gaggini was under the influence of alcohol to the extent she was a less safe driver, and he arrested her at 4:26 a.m.

The arresting officer had determined Gaggini's age from her driver's license; he retrieved his implied consent card and read verbatim to Gaggini the warning for suspects age 21 and over. A copy of the card was admitted in evidence. According to the officer, Gaggini "didn't know what to do," in response to the warning. After he transported her to the jail, he began setting up the Intoxilyzer machine, and he again asked Gaggini whether she wanted to take the test; Gaggini replied "no." The officer then showed Gaggini a form and explained to her that it would be her temporary driving permit. Gaggini then asked the officer to re-read to her the implied consent warning, which he re-read verbatim. Gaggini stated that she would take the test.

The arresting officer administered the test and obtained two breath samples which showed that at 5:14 a.m., Gaggini had a blood-alcohol concentration level of .187; at 5:17 a.m., Gaggini had a blood alcohol concentration level of .167. The arresting officer testified that based, in part, on information he received from the first

responding officer about what the complainant had told him, he believed that Gaggini had submitted to the Intoxilyzer test within three hours of driving the vehicle. Gaggini did not testify at the hearing.

The trial court, in granting Gaggini's motion to suppress, pertinently concluded:

> [Gaggini] was placed under arrest for driving under the influence and implied consent warnings were read to her and she was advised that her license would be suspended if she did not submit to the state administered breath test. This Court finds that the officer read . . . the implied consent warning card for drivers licensed by the State of Georgia. Those warnings indicate that a driver's license will be suspended for failure to provide the requested sample. However, Defendant Gaggini did not have a Georgia driver's license and thus should have been told that her privilege to drive in Georgia, and not her license, would be suspended.

1. The state contends that the trial court erred in excluding the Intoxilyzer test results because the arresting officer properly read the appropriate implied consent warning. Specifically, the state argues that there was no evidence that Gaggini had an out-of-state driver's license, and that even if there were evidence that she did, the arresting officer read the only applicable implied consent warning. We agree.

6

(a) Although the trial court found that Gaggini did not have a Georgia driver's license, our review of the record does not support this finding. In her appellate brief, Gaggini, citing a page of the hearing transcript, states that she "provided [the officer] with an out-of-state driver's license." But evidence that she provided the officer with an out-of-state driver's license is, in fact, not at the page indicated; nor is it anywhere else in the transcript. The trial court's finding that Gaggini did not have a Georgia driver's license was clearly erroneous.[5]

(b) The state contends that the trial court erred in excluding the Intoxilyzer test results because the arresting officer properly read the appropriate implied consent warning. Indeed, the arresting officer testified that he read verbatim to Gaggini the implied consent warning for suspects 21 years of age or over, and a copy of the officer's implied consent card from which he had read was admitted in evidence.

OCGA § 40-5-67.1 (b) pertinently provides that an arresting officer shall select and read to a person arrested for violation of OCGA § 40-6-391,[6] one of three implied

---

[5] *State v. Gillette*, 236 Ga. App. 571, 574 (512 SE2d 399) (1999) (trial court's factual finding in ruling on motion to suppress was clearly erroneous, as there was no evidence presented at the motion hearing to authorize the finding).

[6] OCGA § 40-6-391 (prohibiting driving under the influence of alcohol, drugs, or other intoxicating substances; and setting forth penalties).

consent notices. The first notice is to be read to suspects under the age of 21; the second notice is to be read to suspects age 21 or over; and the third notice is to be read to suspects driving commercial motor vehicles.[7]

Gaggini does not assert that she was under the age of 21, or that she occupied a commercial motor vehicle. Thus, there was no appropriate implied consent notice that the officer could have read to Gaggini, other than the notice that he had read to her, for suspects age 21 and over. That notice pertinently provided that a suspect's "Georgia driver's *license* or *privilege* to drive on the highways of this state" would be suspended if she refused to submit to testing.[8] Thus, the notice applied to Gaggini. Accordingly, there was no substantial basis for the trial court's ruling that Gaggini was not given the proper implied consent warning.[9]

---

[7] See OCGA § 40-5-67.1 (b) (1), (2), and (3).

[8] See OCGA § 40-5-67.1 (b) (2) (emphasis supplied); *McHugh*, 285 Ga. App. 131, 134 (645 SE2d 619) (2007).

[9] See *State v. Chun*, 265 Ga. App. 530, 533 (594 SE2d 732) (2004) (grant of defendant's motion in limine reversed because there was no substantial basis for the trial court's legal conclusion that the officer's statements, which the trial court had found were accurate, were so misleading that they rendered the defendant incapable of making an informed decision about whether to submit to chemical testing).

2. As to the DUI per se charge, the state contends that the trial court erred in basing its ruling, in part, on a finding that there was no admissible evidence that Gaggini had driven within three hours of consuming alcohol. We agree.

The trial court, pertinently, found:

[T]he hearsay testimony of what the complainant said is not admissible for the purpose of showing that Gaggini was driving her vehicle within three (3) hours of consuming alcohol. The officers testified that they did not see [Gaggini] drive the vehicle and there was no admissible evidence presented at the hearing that [Gaggini] had driven within three (3) hours of consuming alcohol.

But the test is not whether Gaggini "had *driven* within three (3) hours of *consuming alcohol*." The test is found in OCGA § 40-6-391 (a) (5), which provides that: "A person shall not drive or be in actual physical control of any moving vehicle while: (5) The person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended." And this court has held that "it is not necessary for . . . probable cause [to effectuate a warrantless arrest], that the driver actually be seen behind the wheel driving while under the influence. Such facts, as any others, may be shown by circumstantial

9

evidence."[10] Moreover, contrary to the trial court's ruling, "hearsay is admissible in determining the existence of probable cause."[11]

The first responding officer testified that at 3:49 a.m. he responded to a call from dispatch about a woman slumped over in a vehicle "in a roadway stopped," but that when he arrived at the scene, Gaggini's vehicle was located "off to the side of the road . . . kind of parked up on the curb." The officer testified that Gaggini was sitting in the driver's seat of the vehicle, her speech was slurred, and the smell of alcohol emanated from inside the vehicle. Gaggini told the officer that she had been to a bar and had consumed an alcoholic beverage. The arresting officer, who arrived at the scene after the first responding officer, testified that Gaggini was sitting in the driver's seat of the vehicle, with the keys in the ignition and the dashboard lights on. The arresting officer testified that Gaggini was leaning forward between the seat and the steering wheel and that she swayed back and forth; an odor of alcohol emanated from her breath and person; her speech was slow and slurred; her eyes were bloodshot with a glazed look; she looked lost and confused; and she swayed as she stepped out

---

[10] *State v. Loy*, 251 Ga. App. 721, 722 (554 SE2d 800) (2001) (punctuation and footnote omitted).

[11] *Bell v. State*, 291 Ga. App. 437, 439 (1) (662 SE2d 248) (2008) (punctuation and footnote omitted).

of the vehicle. The arresting officer, who administered the breath test, testified that at 5:14 a.m., Gaggini's blood-alcohol concentration level was .187.

Even without testimony from the first responding officer about what the complainant had told him, the evidence, although circumstantial, was sufficient to show that Gaggini drove or was in actual physical control of a moving vehicle while her blood-alcohol concentration was 0.08 grams or more within three hours after driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended.[12] Accordingly, the trial court erred in granting Gaggini's motion to suppress.

*Judgment reversed. Ellington, C. J., and Dillard, J., concur.*

---

[12] See *Jarriel v. State*, 255 Ga. App. 305, 306-307 (2) (565 SE2d 521) (2002); *Loy*, supra at 722-723.